## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

DAVID KIDD
c/o Michela Huth, Esq.
PO Box 17
Bolivar, Ohio 44612

        Plaintiff,

v.

LAKE HUMANE SOCIETY
c/o Statutory Agent
J. Jeffrey Holland
1343 Sharon-Copley Road
Sharon Center, OH 44274

and

CASSANDRA HATCH
33932 Roberts Road
Eastlake, Ohio 44095

and

DOES 1-5
c/o Statutory Agent
J. Jeffrey Holland
1343 Sharon-Copley Road
Sharon Center, OH 44274

        Defendants.

**COMPLAINT - CIVIL RIGHTS ACTION
(42 U.S.C. § 1983)**

**[JURY DEMAND ENDORSED HEREON]**

Now comes David Kidd, by and through counsel, and for his Complaint against

Defendants Lake Humane Society, Cassandra Hatch, and Does 1-5., does hereby state as

follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this is a civil action arising under the Constitution of the United States.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks to remedy deprivations, under color of law, of Plaintiff's rights guaranteed by the Fourteenth Amendment to the United States Constitution.

3.      Plaintiff's claims for declaratory relief and compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202.

4.      Plaintiff's claims for declaratory relief and compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

5.      Plaintiff's claims for attorney's fees and costs are predicated upon 42 U.S.C. § 1988.

6.      Venue is conferred by 28 U.S.C § 1391(b) and is proper in the Northern District because the events complained of herein all occurred in this District.

**JURY DEMAND**

7.      Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury in this action.

**COLOR OF STATE LAW**

8.      At all times relevant herein, the Defendants acted under color of state law.

**PARTIES**

9.      Plaintiff David Kidd is an individual resident of the State of Ohio.

10.     Defendant Lake Humane Society, during all relevant times, a 501(c)(3) non-profit organization and an organization organized under .  It is also an R.C. 1717.05 county humane society.  It acted, during all relevant times, under color of law.

2

11. Defendant Cassandra Hatch, during all relevant times, was employed as a humane agent with the Lake Humane Society. She is being sued individually and in her official capacity. She acted during all relevant times, under color of law. She acted, during all relevant times, under color of law.

12. Does 1-5, were during all relevant times, a humane agent with the Lake Humane Society, employees, agents, policy makers, or supervisors. They acted during all relevant times, under color of law. These Defendants are sued in their official and individual capacities. They acted, during all relevant times, under color of law.

## FACTUAL BACKGROUND

### I. First Illegal Search

13. Sometime in the first week of August 2022, between 7:00 a.m. and 8:00 a.m., Defendant Cassandra Hatch and another unknown person, entered upon David Kidd's small family farm, located at 9875 Chillicothe Road, Kirtland, Ohio 44094.

14. Without consent or a warrant, Hatch and this unknown person entered his barn and paddock and took pictures of all of his livestock.

15. Prior to Hatch and the other person entering upon his farm property, Kidd had just left the farm, where he had done some of the farm chores, including feeding and watering his livestock,

16. Kidd's home is adjacent to the farm and has an address of 9865 Chillicothe Road, Kirtland, Ohio 44094.

17. Upon exiting the shower, he heard something at the door, and he opened the door to find a Notice attached to his front door, stating that his animals were food and water deprived.

18. Neither Hatch nor the other unidentified person knocked on his door, or attempted to otherwise make contact with him.

19.     Kidd exited his home and walked around to the side of his house where he saw Hatch and the other person walking into the woods towards his adjacent farm.

20.     Kidd approached Hatch and the unidentified person and asked them what they were doing on his property.

21.     Hatch responded that they had a "tip" that his animals had no food or water.

22.     Hatch proceeded to interrogate Kidd on his deworming schedule, which he chose not to disclose.

23.     Kidd told them to leave his property.

24.     They ignored him.

25.     Because Hatch and the other person would not leave as requested, Kidd followed Hatch and the unidentified person to his Farm.

26.     At the Farm, Kidd showed Hatch that his livestock had food and water.

27.     Hatch commented that his livestock were "laying down" and Kidd responded that they had just ate, per his feeding schedule, and they were relaxing.

28.     After some time of additional interrogation by Hatch, and additional searching of his property and animals, by Hatch and the other person, Hatch and the other person left the farm.

29.     As Hatch and the other person were walking back to their vehicle, Kidd overheard Hatch tell the other person she was with, "I would love to have a goat."

30.     Kidd told her that if she wants one, he can sell her one of his goats.

31.     Hatch responded that "we cannot buy them, but we can take them from you."

32.     Hatch also told Kidd that she would be returning in thirty-days to get his medical records and his deworming schedule.


**II.     Second Illegal Search and First Illegal Seizure**

33.     On or about August 23, 2022, Kidd was awakened at 6:00 a.m. by a pounding on the door of his home.

34.     Hatch and an unidentified person asked Kidd about his "cow", and he responded that he did not own a cow, but did own Steers.

35.     Hatch demanded to see the steer, and Kidd told her no.

36.     Kidd told Hatch and the other identified person to leave his property and that he was not taking them over to the farm.

37.     Ignoring Kidd's demands for them to leave his property, Hatch and the other person left his home property and headed over to his family farm via the wooded area which was part of Kidd's property.

38.     Kidd went over to the farm and saw Hatch standing over his steer that was bedded down, after having his morning meal.

39.     Hatch complained that because he had castrated his steer, that it was illegal to castrate a bull over two months old.

40.     Hatch then called the Kirtland Police Department and told them that she needed their assistance at Kidd's residence because "David was becoming combative and attempting to restrict the officers from seizing his cow."

41.     Upon the police arriving at the family farm, they ordered to move away from the closed gate to the pasture, so that Hatch could gain access to the enclosed pasture which contained the steer.

42.     Kidd threw the chain which was around the gate, onto the ground, and at that point the police grabbed him, handcuffed him, and threw him into the back of the police vehicle for the entire time the search and seizure was being conducted.

43.     After Kidd was released from the police vehicle, the police left the property.

44.     Hatch took Kidd's steer with her when she left that day.

45.     Prior to Hatch leaving she handed Kidd a Notice of Impoundment which identified a "cow" as being impounded by the Lake County Humane Society.

46.     Later that day, Hatch came back to Kidd's home and told him that he had a probable cause hearing the next day at the Willoughby Municipal Court.

**III.    First 959.132 Probable Cause Hearing**

47.     Prior to the 959.132 hearing and outside of the courtroom, not on the record, nor before a judge, Kidd was approached by a woman who did not identify herself, but is now known to be Dana Marie Panella, the special assistant prosecutor.

48.     Panella is an assistant special prosecutor for Lake County Humane Society.

49.     Panella is employed by J. Jeffrey Holland, who is a special prosecutor for many Ohio Humane Societies.

50.     Holland is also the Statutory Agent for Defendant Lake Humane Society.

51.     Prosecutor Panella brought Hatch along ambush Kidd outside the courtroom.

52.     Prosecutor Panella met Kidd outside the courtroom in the hallway and she advised Kidd that if he didn't surrender the steer she was going to charge him with cruelty to companion animals because castrating a steer over two months is illegal.

53.     Hatch made the totally unfounded comment during this time that Kidd was administering Xanax to his steer.

54.     This extortion occurred outside the courtroom and without a judge present.

55.     Kidd signed the surrender form under duress and with no attorney present to assist him in his defense.

56.     After he signed the surrender form, Prosecutor Panella, Hatch and Kidd entered the courtroom where the prosecutor had a short discussion with the judge.

57.     Kidd has no recollection of what occurred in the courtroom with the judge, but the result was that no R.C. 959.132 probable cause hearing occurred.

**IV.     Third Illegal Search and Second Seizure**

58.     On August 26, 2022, Hatch along with an unidentified person arrived at Kidd's home at approximately 10:00 a.m.

59.     Kidd heard them through his window talking to one of his farm employees.

60.     Kidd heard his farm employee tell Hatch and the other person to leave the property, or go to the front door and talk to Kidd.

61.     The employee also told them to stop wandering around Kidd's property.

62.     Because Hatch and the other person did not leave his property, Kidd yelled through the backdoor for them to leave his property if they did not have a warrant.

63.     Hatch responded and told Kidd they were there to look at his medical records.

64.     Kidd told Hatch he would not provide those.

65.     Instead of leaving Hatch and the other person walked to the end of Kidd's driveway, and telephoned the Kirtland Police Department.

66.     Hatch told the Kirtland Police that she had "served David Kidd with an impound in place order for four (4) goats" and that "the order formally turns custody of the animals over to Lake Humane Society."

67.     Hatch also told the Kirtland Police that "the animals would be housed on the property until a warrant could be obtained."

68.     Hatch also told the Kirtland Police that "all paperwork for the warrant was at court awaiting the judges signature" and that "[o]ne of the agents [was] enroute to court to pick up the paperwork."

69.     Kidd has never seen this search warrant and during this raid, he asked multiple times for a copy and was not given one.

70.     The Kirtland Police arrived at Kidd's property.

71.     Hatch then left Kidd's property, while the other unidentified person stayed behind on Kidd's property talking with the police.

72.     Hatch returned a while later, and told Kidd that they did not need a search warrant because Kidd "murdered his livestock without a license."

73.     Hatch, the unidentified person, and the police went next door to Kidd's farm, and went straight into his barn.

74.     Kidd had a goat carcass hanging in the barn, as he had just slaughtered it, and he was getting ready to process it to feed his family.

75.     Hatch proceeded to unhook a gate releasing Kidd's bucks out of their stalls into the general barn area, which resulted in two different goat breeds copulating and placing the smaller goats in danger both on that day, and upon giving birth.

76.     Hatch, at some point in this raid handed Kidd an "On Site Impound Notice" which stated "2 Brown & Black (thin) for the Type and Breed of Animals dated August 26, 2022.

77.     The On Site Impound Notice, marked as evidence his farm animals, required him to pay for care for those animals during this on-site impoundment, and threatened felony tampering if he did not comply:

You are hereby notified that the animals at this location have been impounded on site and marked as evidence by an agent of Lake Humane Society. These animals are evidence of a violation of Ohio Revised Code Chapter 959, Cruelty to Animals, an attempt to commit that offense, or a violation of a local animal cruelty ordinance.

You are required to maintain the animals at the location described above. You may not remove the animals from this location until further notice by Lake Humane Society or court order.

You are required to provide all necessary care for the animals, including:
(1) sufficient quantities of good, wholesome food and water;
(2) access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight; and
(3) veterinary, farrier, and/or other professional care.

Violation of this notice may constitute tampering with evidence, a felony of the third degree pursuant to O.R.C. §2921.12.

78.     On August 26, 2022, Hatch and other unidentified persons removed from Kidd's farm, a live goat and a goat that was slaughtered for food and awaiting processing/

79.     During the search and seizure of these animals, Defendants damaged the hay feed by placing the slaughtered goat carcass upon the clean hay – thus damaging it and making it inedible for his animals due to contamination.

80.     During the search and seizure Defendants released certain pygmy goats from their stalls which resulted in them breeding with a different goat species, which was dangerous for the smaller goat species.

**V.      R.C. 959.132 Probable Cause Hearing**

81.     On August 31, 2022 a probable cause hearing was held in Willoughby Municipal Court pertaining to the seizure of Kidd's two goats.

82.     Kidd retained Attorney Robert Farinacci to represent him at this hearing.

83.     During this hearing Attorney Farinacci attempted to attempted to argue that the searches and seizures were illegal due to a lack of a search warrant, and therefore the court could not find probable cause that the animals were subject to animal neglect or cruelty, because the evidence was obtained illegally.

84.     The trial judge did not permit Kidd's attorney to make any suppression or illegal search and seizure arguments, stating that those arguments need to be made in the criminal case.

85.     There was no pending criminal case.

86.     The state court found there was probable cause to impound one live goat and one dead goat, and ordered Kidd to pay Defendant Lake Humane Society $257.70 each month, with no end date of this payment obligation, and it had to be renewed monthly.

87.     Kidd did not make these payments, as he could not afford to.

88.     On September 8, 2022 Special Prosecutor Jeffrey Holland filed a Notice of Forfeiture and Disposition which gave notice that the Lake Humane Society "shall make final disposition of the goat, pursuant to this court's order and operation."

89.     To date, no criminal charges have been filed against Kidd related to either the steer nor the goats, nor any other animal.

**VI.      Fourth Warrantless Search**

90.     In early January 2023, two employees of Lake Humane Society arrived at Kidd's farm.

91.     They did not identify themselves other than to say that one of them was the "manager."

92.     This would be the forth illegal search conducted by Defendants.

93.     Without a warrant and without consent these persons walked through his property and inspected his farm animals.

94.     The  manager concluded the search by stating that the animals looked healthy and they were going to "close his case."

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## FOURTH AMENDMENT
## UNREASONABLE SEIZURE

95.     Plaintiff restates the foregoing allegations of this Complaint as if fully restated herein.

96.     Defendants, under color of state law, deprived Kidd of rights, privileges and immunities secured by the Fourth Amendments to the U.S. Constitution, which grants him the right to be free from unreasonable search and seizure of his person and his home.

97.     The On Site Impoundment Notice effected a Fourth Amendment unreasonable seizure upon Kidd.

98.     Defendants limitation and control over his animals as set forth pursuant to the on-site impoundment notice, constitutes a deprivation of Kidd's rights under the Fourth Amendment of the United States Constitution under color of state law in violation of 42 U.S.C. Section 1983, et seq.

99.     No adequate remedy is available under Ohio law for such deprivation.

100.    Kidd is entitled to reimbursement of his attorneys' fees form Defendants as a consequence of their violation of 42 U.S.C. Section 1983, et seq.

101.    Kidd was not permitted to use his property as he desired because the Notice stated that he was restricted as to what he could do with his animals, and was limited to feeding and caring for them, and paying for this with his own monies.

102.    The restrictions on his animals, and the obligation to care for them for the State, constitutes an unreasonable seizure under the Fourth Amendment.

11

103.     Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

104.     Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

### SECOND CAUSE OF ACTION
### FIFTH/FOURTEENTH AMENDMENTS
### DAMAGES FOR TAKING

105.     Plaintiff restates the foregoing allegations of this Complaint as if fully restated herein.

106.     The Fifth Amendment to the Constitution provides that "private property shall not be taken for public use, without just compensation." U.S. Const. amend. V.

107.     Kidd has a right under the Fifth Amendment, made applicable to the states via the Fourteenth Amendment, which requires the payment of just compensation by Defendants/

108.     Defendants took Kidd's property interest in his animals without payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

109.     By impounding the animals on-site (August 26, 2022 Notice), Defendants imposed restrictions upon Kidd's ability to use his own property, and required him to bear the burden of having to pay to feed and care for them.

110.     Because the impoundment on site notice appropriates Kidd's property interest in his animals by restricting his use, and by requiring him to care for the animals during this unspecified timeframe, this constitutes a per se taking, requiring compensation.

111.     When Defendants required Kidd to pay for the care of the evidence (the impounded-on site animals), it took his private property without paying for it.

112.   When Defendants took Kidd's private property without paying for it, Defendants violated the Fifth Amendment.

113.   Defendants have not paid, will not pay, and does not intend to pay just compensation then, now, or into the future.

114.   The actions and/or inactions of Defendants was expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected right of Kidd.

115.   Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

116.   Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

117.   Kidd is entitles to just compensation for Defendants' taking of his property in violation of the Fifth Amendment.

## THIRD CAUSE OF ACTION
### FOURTH AMENDMENT
### UNREASONABLE SEARCHES AND SEIZURE

118.   Plaintiff restates the foregoing allegations of Kidd of rights, privileges and immunities secured by the Fourth Amendments to the U.S. Constitution, which grants him the right to be free from unreasonable search and seizure of his person and his home.

119.   Defendants entered Kidd's property on four separate occasions without a warrant, without any exception to the warrant, and without consent.

120.   Kidd had a legitimate and reasonable expectation of privacy in the targeted areas.

121.   Defendant physically intruded upon Kidd's property and his privacy.

122.    By entering Kidd's farm without a warrant to search and seize his animals, Defendants violated Kidd's right to be free from unreasonable search and seizures.

123.    Defendants seized Kidd's animals without a warrant, without any exception to the warrant, and without consent.

124.    By seizing Kidd's animals without a warrant, Defendants violated Kidd's right to be free from unreasonable searches and seizures.

125.    Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

126.    The actions and/or inactions of Defendants was expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected right of Kidd.

127.    Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

### FOURTH CAUSE OF ACTION
### FAILURE TO TRAIN, SUPERVISE, MONITOR
### AND DISCIPLINE EMPLOYEES

128.    Plaintiff restates the foregoing allegations of this Complaint as if fully restate herein.

129.    During all times relevant to this action, Lake Humane Society's enacted and pursued policies and procedures which related to the training, supervision, and retention of Defendant Agents and Does.

130.    The need for adequate training, supervision, monitoring, and discipline of officers in basic Constitutional principles and rights of citizens is obvious in light of the scope of duties assigned to Lake Humane Society Humane Agents.

131.   Inadequacy of training, supervision, monitoring, and discipline with respect to Constitutional rights is likely to result in violations of the rights of its citizens, such that the failure of the City to provide such training, supervision, monitoring, and discipline demonstrates the City's deliberate indifference to this need.

132.   Subjects on which the needs for training, supervision, monitoring, and discipline are obvious are the citizen's right to be free from unlawful searches and seizures and the citizen's right to due process with respect to the deprivation of their property interest.

133.   Defendant Lake Humane Society has a history of failing to adequately train, supervise, monitor, and discipline its officers, which has resulted in repeated violations of the Constitutional rights of citizens, including Kidd.

134.   To the extent that the City does have formal policies which purport to provide basic protection of the Constitutional rights of its citizens, Defendant Lake Humane Society has engaged in a practice of acquiescence to violations of those policies by failing to adequately discipline its officers for violations, failing to supervise, train and monitor to prevent such violations.

135.   Defendant Lake Humane Society's failure to adequately train, supervise, monitor, and discipline officers for violations of constitutional rights is widespread, longstanding, and well-settled, such that it constitutes a custom and usage with the effective force of law.

136.   Among other policies, practices and customs, Lake Humane Society implements a policy or custom of engaging in entries onto private property without consent, and under the guise of authority to conduct searches without a warrant.

137.    Among other policies, practices and customs, Lake Humane Society implements a policy or custom of engaging in seizures of private property without consent, and under the guise of authority to conduct searches without a warrant.

138.    These policies or customs are implemented in a manner whereby Defendant Lake Humane Society's employees lie to citizens about having a search warrant or tell the citizen that they do not need a warrant to conduct searches and seizures on private property.

139.    Defendant Lake Humane Society's training and execution in and of the policy and custom of deploying warrantless searches and seizure is responsible for violation of the Constitutional rights of Kidd, among others.

140.    Defendant Lake Humane Society's failure to adequately train and supervise its officers proximately caused the violation of Kidd's right to be free from unlawful searches and seizures.

141.    Defendant Lake Humane Society's failure to adequately train and supervise its officers proximately caused the violation of Kidd's right to due process.

142.    Defendant Lake Humane Society's failure to adequately train and supervise its officers proximately caused the takings violation because Kidd's had a right to use his property as he wishes, and to not be forced into paying for their care.

143.    Defendant Lake Humane Society's failure to discipline its officers for violations of citizens' constitutional rights during the course of the multiple illegal searches and seizures, proximately caused the violation of Kidd's constitutional rights.

144.    By its failure to properly train, supervise, monitor, and discipline its employees, Defendants, acting under color of law, deprived Kidd of his right to be free from invasion of his property and his property interests protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

145.    Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

146.    The actions and/or inactions of Defendants was expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected right of Kidd.

147.    Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983
#### *(Monell Claim)*

148.    Plaintiff incorporates and re-alleges each and every prior and succeeding allegation of this Complaint as if rewritten here fully.

149.    Defendant Lake Humane Society's has implemented or executed policies or adopted widespread practices as custom with the force of law, all of which govern the conduct of its humane agents and employees.

150.    Lake Humane Society's has adopted such policies, practices or customs in connection with searches and seizures, investigations, and the filing of criminal complaints

151.    To the extent that Lake Humane Society's has adopted formal policies which purport to protect the Constitutional rights of citizens, it has tolerated, failed to discipline, and acquiesced to conduct by its humane agents and other employees, which specifically violates such policies.

152.    Lake Humane Society has a pattern and practice of coercing and threatening a person in order to obtain surrender of their animals.

153.   Lake Humane Society has a pattern and practice of failing to ensure the holding of the R.C. 959.132 mandated hearings when it obtains a surrender from the animal owner.

154.   Lake Humane Society has a pattern and practice of entering persons' private property without consent and without a warrant.

155.   Lake Humane Society has a pattern and practice of entering people's property without even attempting to obtain consent from them.

156.   Lake Humane Society has a pattern and practice of not asking the animal owner whether they consent to entry onto the property, and instead simply walks onto the property and conducts searches and seizures.

157.   Lake Humane Society has a pattern and practice of refusing to leave when told to by an animal owner.

158.   Lake Humane Society has a pattern and practice of using the local police to help ensure its success in the illegal searches and seizures it conducts.

159.   The execution of Lake Humane Society's policies and customs proximately caused the violation of Kidd's right to be free from unlawful searches of his private property.

160.   The execution of Lake Humane Society's policies and customs proximately caused the violation of Kidd's right to due process as it pertains to his property interests.

161.   The execution of Lake Humane Society's policies and customs proximately caused the violation of Kidd's right to redress his grievances as to the searches and seizures conducted by Defendants.

162.   The execution of Lake Humane Society's policies and customs proximately caused the violation of Kidd's right to be free from government appropriating private property without just compensation.

163.    These policies and procedures were enacted and pursued with full knowledge that the Constitutional violations pleaded herein were a foreseeable result.

164.    Lake Humane Society acted with deliberate indifference, with wanton and willful disregard, recklessly, and intentionally.

147. The policies and procedures of Lake Humane Society's were the proximate cause of the deprivation of Kidd's Constitutional rights.

165.    Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

166.    The actions and/or inactions of Defendants was expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected right of Kidd.

167.    Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

## SIXTH CAUSE OF ACTION
### DECLARATORY JUDGMENT

168.    Plaintiff restates the foregoing allegations of this Complaint as if fully restate herein.

169.    There exists real, justiciable controversies between and among the parties that this Court can finally adjudicate and resolve.

170.    Plaintiff requests a declaration that the On-Site Impoundment Notice is void and unenforceable because there is no basis in law to force Kidd to board, feed, and take care of his animals that are designated as "evidence" by the State.

171.    Plaintiff further requests a declaration that R.C. 959.132 is unconstitutional because it effects a permanent deprivation without due process under the United States and Ohio Constitution.

172.    Plaintiff further requests a declaration that Defendants violated Kidd's First Amendment Rights by depriving him of the ability to seek redress for his grievances in a court of law.

173.    Plaintiff further requests a declaration that the four searches and two seizures are unconstitutional under the Fourth and Fourteenth Amendments.

174.    Plaintiff further requests a declaration that Defendants have taken Kidd's property for public use without just compensation in violation of the Firth Amendment of the Unites States Constitution and the Ohio Constitution.

175.    Plaintiff further requests a declaration that Plaintiff Kid is entitled to punitive damages and attorney's fees as a consequence of Defendants violations of 42 U.S.C. Sections 1983 and 1988, as set forth in the Causes of Action set forth in this Complaint.

## SEVENTH CAUSE OF ACTION
### FOURTEENTH AMENDMENT
### DUE PROCESS

176.    Plaintiff restates the foregoing allegations of this Complaint as if fully restate herein.

177.    Under the Fourteenth Amendment due process clause, state actors may not "deprive any person of [] property, without due process of law." U.S. Const. amend. XIV.

178.    Kidd has a due process right secured by the Fourteenth Amendments to the United States Constitution, the Ohio Constitution and the Civil Rights Act, 42 U.S.C. Section 1983, et seq, and have a cognizable property or liberty interest in his animals secured by the preceding constitutions and statutes.

179.    Two probable cause hearings were held to determine whether Defendants had probable cause to impound the animals.

180.    The first hearing did not proceed because Kidd was coerced and threatened into surrendering his steer.

181.    The second hearing the court ordered Kidd to pay a monthly care bond.

182.    He failed to pay this bond, and Defendant Lake Humane Society disposed of his animals.

183.    R.C. 959.132 authorizes the government to impound an animal if it believes a violation of R.C. 959.13 and/or 959.131 has been committed.

184.    If the court finds probable cause then the animal owner must pay a monthly care bond to Lake Humane Society during the pendency of the criminal case.

185.    A new bond must be paid every 40 days, and failure to do so results in the forfeiture of the animals.

186.    If Defendants had filed criminal charges against Kidd, he would have had an opportunity to defend the allegations against him.

187.    Even if Kidd was ultimately found innocent of the charges, he would nevertheless have been permanently deprived of his property as a result of the forced surrender and the probable cause decisions, which purported to effect a forfeiture of his property.

188.    Kidd has a property interest in the animals taken by Defendants.

189.    Defendants are not permitted to deprive Kidd of his property without due process.

190.    The risk of erroneous deprivation is significant in this case because in Kidd's case the state court found probable cause under R.C. 959.132, yet he did not have an opportunity to contest the illegal search and seizure because no criminal charges were ever filed.

191.    Kidd was unable to put a stop to the probable cause decisions because they are not final appealable orders.

192.    Kidd had no recourse for recovery of his animals, both because he was not criminally charged, and because even if he was criminally charged, the animals were ordered to be forfeited.

193.    Defendants have little interest in keeping ownership of animals belonging to innocent citizens.

194.    Since August of 2022 Kidd has been deprived of his property without constitutionally adequate pre- or post-deprivation process.

195.    Defendants have deprived Kidd of the opportunity to contest the deprivation in a meaningful time and manner, despite that Defendants lack any continuing lawful interest in retaining the property of an innocent animal owner.

196.    The actions and/or inactions of Defendants were expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected rights of Plaintiff Kidd.

197.    Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

198.    The actions and/or inactions of Defendants was expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected right of Kidd.

199.    Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

**EIGHTH CAUSE OF ACTION**
**FOURTEENTH AMENDMENT**
**DUE PROCESS**
**(On Site Impoundment Notice)**

200.    Plaintiff restates the foregoing allegations of this Complaint as if fully restated herein.

201.    Defendants, under color of state law, deprived Kidd of rights, privileges and immunities secured by the Fourteenth Amendment to the U.S. Constitution, which grants him the right to due process.

202.    The On Site Impoundment Notice deprived Kidd of the opportunity to contest the seizure in a meaningful time and manner.

203.    No adequate remedy is available under Ohio law for such deprivation.

204.    Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

205.    The actions and/or inactions of Defendants was expressly designed to intentionally or wantonly cause harm to Kidd due to the utter disregard of the constitutionally protected right of Kidd.

206.    Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

**NINTH CAUSE OF ACTION**
**UNCONSTITUTIONALITY OF R.C. 959.132**

207.    Plaintiff restates the foregoing allegations of this Complaint as if fully restated herein.

208.    Ohio Revised Code Section 959.132 is constitutionally infirm in that it effects a permanent deprivation by depriving an animal owner of the opportunity to contest the search and seizure in a meaningful time and manner.

209.    Section (B) of R.C. 959.132 authorizes a humane agent to seize and impound animals upon the belief by the humane agent that there is "probable cause to believe is the subject of an offense."

210.    Section (E)(1) of R.C. 959.132 mandates a hearing at which the state court will :determine whether the officer impounding an animal had probable cause to seize the animal."

211.    Section (E)(1) of R.C. 959.132 also requires a "bond or cash deposit" if the court determines that probable cause exists for the care of the animals "for not less than thirty days beginning on the date on which the animal was impounded."

212.    If probable cause does not exist, the animals will be returned to the owner.  R.C. 959.132(E)(2).

213.    Section (E)(3) of 959.132 states that the owner can renew this bond or cash deposit every thirty days.

214.    However, if no bond or cash deposit is posted by the animal owner, or if the payments are not renewed each month, "the impounding agency may determine the disposition of the animal unless the court issues an order that specifies otherwise."

215.    Section (G) of 959.132 states that if the person if found not guilty of committing an offense, the court shall order the animal to be returned to its owner, "if possible", which implies, that prior to conviction, ownership of the animal does not change.

216.    It is clear that R.C. 959.132 mandates permanent forfeiture of a seized animal if the judge finds probable cause and the owner fails to post the bond or cash.

217.    The result of this is that a person whose animal has been seized, and against whom there is probable cause that he violated one of the animal neglect/cruelty statutes, will lose his animal permanently unless he posts bond, even if he is ultimately found innocent of the underlying criminal charges.

218.    Kidd has a property interest in their animals.

219.    Defendants are not permitted to deprive Kidd of his animals without due process of law.

220.    The risk of erroneous deprivation of Kidd's property interest is significant.

221.    Even if Kidd had been criminally prosecuted, he would still have been permanently deprived of his property interest, because he failed to pay the court ordered care bond.

222.    If Kidd had been criminally prosecuted, he would have had an opportunity to contest the searches and seizures and could have been found not-guilty.

223.    Under R.C. 959.132's scheme, because he was unable to pay immediately the care bond/cash his animals were forfeited, with no apparent recourse for their recover….even if he had been ultimately found innocent of the underlying charges.

224.    This creates a high risk of erroneous deprivation.

225.    Defendants have little interest in keeping ownership and/or possession of animals belonging to innocent persons.

226.    Thus, the portion of R.C. 959.132 which permanently deprived Kidd of his property interest, absent a finding of guilty, is unconstitutional.

**TENTH CAUSE OF ACTION**
**FIRST AMENDMENT**

227.    Plaintiff restates the foregoing allegations of this Complaint as if fully restate herein.

228.    The right of Plaintiff to meaningfully petition the government for redress of grievances as secured by the First Amendment to the U.S. Constitution.

229.    The First Amendment provides citizens with the right to petition the government for redress of grievances which includes the right of access to the courts.

230.    Defendants failed to charge Kidd with any criminal offenses related to the searches and seizures conducted on his real and personal property.

231.    As a result of the failure to file criminal charges against Kidd, he was deprived of the ability to challenge and address the illegal searches and seizures.

232.    The state judge at the probable cause hearings stated that Kidd was not permitted to argue that the searches and seizures were illegal at that hearing, but instead had to do this in the criminal case.

233.    A judgment of a R.C. 959.132 hearing is not a final appealable order.

234.    No criminal case has been filed, and therefore Kidd was prevented from addressing his grievances in the criminal case.

235.    Defendant Lake Humane Society is liable pursuant to the Monell standard as flowing from the execution of a policy or custom pursuant to one or more of the four recognized methodologies. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

236.    Kidd has suffered damages which this Court can remedy by an order and/or judgment for an award of damages (including nominal damages), plus interest and attorney fees.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff David Kidd respectfully requests this Court to:

a. Enter an order for an award of damages including (but not limited to) punitive damages, nominal damages and just compensation;

b. For all costs of this action.

c. For declaratory judgments as previously outlined in this Complaint.

d. Adjudge and declare that the conditions, acts, omissions, ratification, policies, and practices of Defendants and their agents, officials, and employees are in violation of the right of Plaintiff under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

e. Enjoin Defendants, their agents, officials, employees, and all persons acting in concert under color of state law or otherwise, from continuing the unlawful acts, conditions, and practices described in this Complaint;

f. Order Defendants, their agents, officials, employees, and all persons acting in concert under color of state law or otherwise, to develop and implement, as soon as practical, a plan to require the mandated due process procedures. Defendants' plan, at a minimum, must address deficiencies in policies and procedures related to this.

g. Enter an order for an award of interest as required by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019);

h. Enter an order for an award of actual reasonable attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988 and all other applicable laws, rules, or statutes; and

i. Enter an order for all such other relief the court deems warranted and/or equitable.

j. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction.

Respectfully submitted,

/s/ Michela Huth
MICHELA HUTH
(OH Reg. No. 0091353)
PO Box 17
Bolivar, OH 44612
Phone:  330-440-4027
Email:  michelahuth.esq@gmail.com
*Attorney for Plaintiff*

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
(NY Reg. No. 1637677)
545 E. Jericho Turnpike
Huntington Station, New York 11746
(PH) 631-629-8111 or 718-261-0200
(FAX) 631-961-8789 or 718-793-2791
Email: richard@thedoglawyer.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Second Amended

Complaint as set forth in this pleading.

/s/ Michela Huth
MICHELA HUTH